Brian Hilton HARTMAN, A–
35–205–608, Petitioner,

v.

Kenneth John ELWOOD, Acting District Director of the Philadelphia Office of the Immigration and Naturalization Service, Respondent.

Civil Action No. 02–8249.

United States District Court,
E.D. Pennsylvania.

April 4, 2003.

Steven & Morley, Bagia & Morley, Philadelphia, PA, for Petitioner.

Richard M. Bernstein, Asst. U.S. Atty., U.S. Attorney's Office, Philadelphia, PA, for Respondent.

## MEMORANDUM

DuBOIS, District Judge.

Presently before the Court is petitioner Brian Hilton Hartman's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, challenging his final order of removal from the United States. The petition is fully briefed. For the reasons set forth in this Memorandum, the Court grants the petition.

## I. BACKGROUND

Petitioner, Brian Hilton Hartman ("Hartman"), is a native and citizen of Guyana. Hartman entered the United States as a lawful permanent resident on May 28, 1976. On November 14, 1995, Hartman was convicted of delivery of a Schedule II controlled substance (cocaine) under 35 Pa.C.S.A. § 780–113(a)(30) in Berks County, Pennsylvania, and was sentenced to a term of imprisonment of three to six years.

Because of that drug conviction, on March 26, 1996, the Immigration and Naturalization Service ("INS") issued Hartman an Order to Show Cause ("OSC"), the charging document for deportation proceedings. The OSC charged Hartman as deportable under §§ 241(a)(2)(A)(iii) and 241(a)(2)(B)(I) of the Immigration and Naturalization Act of 1952 ("INA"), as amended, 8 U.S.C. § 1227(a)(2)(A)(iii), 1227(a)(2)(B)(I), as both an "aggravated felon" and an alien who had been convicted of a controlled substance violation.

In January of 1997, Hartman sought relief from deportation by applying for a discretionary waiver under § 212(c) of the INA, 8 U.S.C. § 1182(c).[1] That application for a § 212(c) waiver of deportation was denied by an Immigration Judge ("IJ") at a hearing on April 14, 1997, based on Section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, and the Attorney General's decision in *Matter of Soriano*, 1996 WL 426888, 21 I. & N. Dec. 516 (BIA 1996).

Section 440(d) was adopted as part of AEDPA on April 24, 1996, and provided that individuals convicted of an aggravated felony were ineligible to be considered for discretionary relief under § 212(c), irrespective of the time served in prison. Prior to AEDPA, § 212(c) waivers of deportation were available to aggravated felons who had accrued seven consecutive years of lawful permanent residence in the United States and served less than five years in prison.

---

1. Before it was amended and repealed in 1996, § 212(c) of the INA provided, in pertinent part:

   Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General ... The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

   8 U.S.C. § 1182(c) (1994) (repealed 1996).

In *Soriano,* the Attorney General ruled that § 440(d) of AEDPA applied to deportation proceedings pending on April 24, 1996, the date AEDPA was enacted. Deportation proceedings against Hartman based on his drug conviction had been pending since March 26, 1996, when the INS issued the OSC. Accordingly, based on the *Soriano* decision, the IJ applied § 440(d) of AEDPA to Hartman's § 212(c) waiver application and denied that application because he had been convicted of an aggravated felony.

At the April 14, 1997 hearing, Hartman also claimed he was entitled to derivative citizenship based upon his birth to an American father; the IJ convened a second hearing to address Hartman's derivative citizenship claim on August 11, 1997. Hartman then filed a formal motion to terminate deportation proceedings based on his claimed citizenship in November 1997. After several hearings and continuances, on March 19, 1999, the INS issued a memorandum finding that Hartman failed to submit sufficient evidence to show that he was entitled to United States citizenship through his father. On September 5, 2000, the IJ issued its decision denying the citizenship claim; however, in that decision, the IJ also concluded that Hartman was eligible to seek relief under § 212(c).

A hearing was held on October 19, 2000 before a new IJ at which Hartman again sought a discretionary waiver under § 212(c). The INS argued at that hearing that Hartman would be ineligible for a waiver on November 14, 2000, less than one month later, because, as of that date, Hartman would have been incarcerated for "at least five years." 8 U.S.C. § 1182(c). Despite the INS's arguments, a hearing on the merits of Hartman's application for § 212(c) relief was re-calendared to the next available date, January 25, 2001.

On January 25, 2001, the IJ ruled that Hartman's initial § 212(c) application should not have been denied in April 1997. The IJ based that decision on *Sandoval v. Reno,* 166 F.3d 225 (3d Cir.1999), in which the Third Circuit reversed *Soriano* and held that § 440(d) of AEDPA did not apply to cases pending on the date of that statute's enactment. In addition, the IJ found that Hartman had been seeking a § 212(c) waiver since January 1997 and was prevented from doing so until January 25, 2001 "through no fault of his own." Pet. at Ex. C. Accordingly, the IJ concluded that Hartman was eligible to proceed with his waiver application under former § 212(c) notwithstanding the fact that he had served more than five years of imprisonment. Subsequently, the IJ held that Hartman was entitled to § 212(c) relief and granted him a waiver of deportation.

The INS appealed, contending that Hartman was ineligible for a § 212(c) waiver because when the IJ granted him a waiver, he had been in prison for more than five years. On September 27, 2001, the Board of Immigration Appeals ("BIA") rejected that argument and affirmed the IJ's decision. Because of the "unusual number of delays and administrative problems," the Third Circuit's reversal of the *Soriano* decision, and Hartman not "contribut[ing] ... to the delays in his case," the BIA held that the "unusual circumstances" of his case precluded it "from subjecting him to former section 212(c)'s bar to relief." Pet. at Ex. D. Accordingly, the BIA dismissed the INS's appeal, stating that "barring [Hartman] from obtaining relief simply because [the IJ] could not schedule his case before he became ineligible would have been manifestly unfair and contrary to the interests of justice." *Id.*

On October 27, 2001, the INS filed a motion to reconsider, reiterating that Hartman was statutorily ineligible for § 212(c) relief because he had been incarcerated for more than five years. On

March 13, 2002, a "separate and different panel of Board members" granted the INS's motion on that ground. *Id.* at ¶ 34. The BIA stated that although Hartman was eligible for a § 212(c) waiver when he made his initial application in January 1997, he was statutorily ineligible for such relief when the IJ, on January 25, 2001, "concluded the merits hearing and ultimately issued a final decision granting the relief," because he had served more than five years in prison. *Id.* at Ex. E. Finding that there "exists no statutory directive allowing either the [IJ] or the [BIA] to disregard the applicable statutory provisions regarding section 212(c) relief on the basis of 'administrative difficulties,'" the BIA held it was "bound by the statutory provisions affecting the respondent's eligibility for section 212(c) relief." *Id.* As such, the BIA vacated its decision of September 27, 2001, and ordered Hartman removed from the United States.

Hartman's motion to reconsider the BIA's decision was denied on October 24, 2002. He then filed the instant habeas petition on October 31, 2002. On November 1, 2002, the Court stayed Hartman's removal pending resolution of his habeas petition.

## II. DISCUSSION

Hartman makes several arguments in support of his petition. First, he contends that he is entitled to a § 212(c) waiver because of the delays caused by the INS in addressing the merits of his application and the Attorney General's "improper interpretation of the law" in *Soriano*. In amplifying his argument, he claims that the merits of his § 212(c) application would have been addressed before he became statutorily ineligible had the IJ not relied on the erroneous *Soriano* decision in denying his waiver application in April 1997. It is Hartman's position that he should not be "penalized" for the Attorney General's misinterpretation of the law and for the myriad of "unnecessary delays" in addressing his application, and that allowing the order of his removal to stand, under these circumstances, is a violation of due process.

Second, Hartman argues that the Government, by "interpret[ing] the law improperly and incorrectly, thereby prejudicing [his] rights," is now equitably estopped from asserting that he is statutorily ineligible for § 212(c) relief due to the length of his incarceration. According to Hartman, the Government cannot claim that he is ineligible for a § 212(c) waiver because "too much time has elapsed" due to its own "erroneous legal interpretations" and "deliberate foot-dragging." Such "actions and inaction of the INS," Hartman alleges, amount to "affirmative misconduct" on the part of the Government. Third, Hartman argues that there is no authority for a subsequent panel of the BIA to reverse a decision rendered by a prior BIA panel—he contends that the BIA had no authority to issue its decision of March 13, 2002, vacating the BIA's decision of September 27, 2001 which affirmed the IJ's grant of a § 212(c) waiver.

For the reasons set forth below, the Court agrees with Hartman's first contention that it was improper for the BIA to apply the statutory five-year-imprisonment bar to his application for § 212(c) relief because of the erroneous decision in *Soriano* and grants Hartman relief on that ground. In view of that decision, the Court need not address Hartman's other arguments—equitable estoppel and the BIA's appellate procedures.

### A. Section 212(c) Waiver—General

#### 1. *Statutory Background*

The availability of § 212(c) discretionary relief from deportation that Hartman seeks has been controlled by a series of

statutes. Initially, § 212(c) of the INA of 1952 stated that:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General.

8 U.S.C. § 1182(c) (1994) (repealed 1996).[2] Thus, pursuant to § 212(c) of the INA of 1952, the Attorney General was granted broad discretion to waive deportation in cases where aliens had accrued seven years of lawful permanent residence in the United States. *See St. Cyr*, 533 U.S. at 294–95, 121 S.Ct. 2271.

Statutes enacted in recent years have reduced the class of aliens eligible to be considered for discretionary relief under § 212(c). In 1990, INA § 212(c) was amended by § 511(a) of the Immigration Act of 1990, Pub.L. No. 101–649, 104 Stat. 4978 (1990), which provided that "an alien who has been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years" is statutorily ineligible to be considered for § 212(c) relief. Thus, under the 1990 amendment to INA § 212(c), aliens convicted of an aggravated felony who had served more than five years in prison at the time their application for relief was decided were barred from even being considered for discretionary relief.

On April 24, 1996, the class of aliens eligible for § 212(c) relief was further reduced when Congress enacted AEDPA. Section 440(d) of AEDPA eliminated the discretionary waivers of deportation for those aliens convicted of an aggravated felony or drug offense, irrespective of the time served in prison.[3] *See id.* at 297, n. 7, 121 S.Ct. 2271. Finally, on September 30, 1996, § 304 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009–546, repealed § 212(c) with respect to those cases in which the INS instituted removal proceedings[4] on or after April 1, 1997.[5]

### 2. *Application of Section 212(c)*

In *Soriano*, the Attorney General considered the applicability of § 440(d) of

---

**2.** Although facially § 212(c) applied only to exclusion proceedings, it has consistently been interpreted to apply to deportation proceedings as well. *See INS v. St. Cyr*, 533 U.S. 289, 294, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

**3.** Section 440(d) states, in pertinent part, that "subsection [(c) of Section 212] shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (c), or (D)." AEDPA § 440(d). In this case, the INS charged Hartman as deportable under §§ 241(a)(2)(A)(iii) and 241(a)(2)(B)(I) for his cocaine conviction. Section 241(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). Section 241(a)(2)(B)(I) states that "[a]ny alien who at any time after admission has been convicted of a violation of

... any law or regulation of a State ... relating to a controlled substance ... is deportable." 8 U.S.C. § 1227(a)(2)(B)(I).

**4.** Under the IIRIRA, in place of separate "deportation" and "exclusion" proceedings, a uniform "removal" proceeding was instituted. 8 U.S.C. § 1231.

**5.** Section 212(c) was replaced with a procedure called "cancellation of removal." *See* 8 U.S.C. § 1229b (1999). Section 1229b provides that "[t]he Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony." 8 U.S.C. § 1229b (1999).

AEDPA to cases pending on the date of that statute's enactment. Concluding that § 440(d)'s application to such cases would not have an impermissibly retroactive effect, the Attorney General ruled that § 440(d) would apply to cases pending on April 24, 1996, the date of AEDPA's enactment.

Thereafter, in *Sandoval*, the Third Circuit held that Congress intended "that AEDPA's amendment to INA § 212(c) should not apply to cases pending on the date of enactment" and reversed the Attorney General's ruling in *Soriano*. *Sandoval*, 166 F.3d at 242. In *Sandoval*, the alien was subject to deportation due to a drug conviction in 1993. On June 14, 1994, four months before he would have completed seven years of continuous residency as a lawful permanent resident, the IJ ruled that Sandoval was deportable and ineligible for a § 212(c) waiver because "he had not met the seven-year lawful domicile requirement." *Id.* at 228. Sandoval appealed that decision to the BIA. While the appeal was pending, Congress passed AEDPA. On July 16, 1997, the BIA dismissed Sandoval's appeal because § 440(d) of AEDPA rendered him "statutorily ineligible for section 212(c) relief"—due to his drug conviction—and ordered him deported. *Id.* In doing so, the BIA relied upon the Attorney General's ruling in *Soriano*. The Third Circuit reversed the BIA's determination. After analyzing "other comparable provisions" of AEDPA and the "legislative history of the revision to § 212(c)," that court concluded that "Congress did indeed express an intent that AEDPA's amendment to INA § 212(c) should not apply to cases pending on the date of enactment." *Id.* at 241, 242. Ac-

cordingly, holding that *Soriano* had been given an "impermissibly retroactive effect," the court directed the INS to address the merits of Sandoval's claim for discretionary relief under § 212(c).

Although *Sandoval* held that § 440(d) of AEDPA shall not apply to cases *pending* on the date of AEDPA's enactment, courts continued to apply that section to aliens whose convictions had occurred before AEDPA's enactment, but whose deportation proceedings were initiated *after* the statute's passage. In *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the Supreme Court rejected that application of AEDPA to aliens who pleaded guilty prior to the statute's enactment, finding it to have an impermissibly retroactive effect.[6] The Court held that " § 212(c) relief remains available for aliens ... [who] would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *Id.* at 326, 121 S.Ct. 2271. Thus, under *St. Cyr*, the AEDPA limitations on § 212(c) relief do not apply to an alien, such as Hartman, who was convicted prior to April 24, 1996, the date AEDPA was enacted.

### B. Petitioner is Eligible for Section 212(c) Waiver

In response to Hartman's first argument that he is eligible for a discretionary waiver due to, *inter alia*, the erroneous decision in *Soriano*, the Government contends that the statute, 8 U.S.C. § 1182(c), "clearly" provides that Hartman is ineligible for such relief. Gov't. Resp. at 4. Because Hartman committed an aggravated felony and served a prison term in excess of five years, the Government argues that the

**6.** The Court explained:

> Prior to AEDPA and IIRIRA, aliens ... had a significant likelihood of receiving § 212(c) relief. Because respondent, and other aliens like him, almost certainly relied upon

that likelihood in deciding whether to forgo their right to a trial, the elimination of any possibility of § 212(c) relief by IIRIRA has an obvious and severe retroactive effect. *Id.* at 325, 121 S.Ct. 2271.

"consequence" of former § 212(c)—as it existed at the time of his conviction—is "straightforward" and "unambiguous," warranting a dismissal of his petition. *Id.* at 4, 7. It is the Government's position that the BIA, in ordering Hartman removed, correctly reasoned that the five-year bar made no exceptions for "administrative difficulties" nor otherwise allowed either the IJ or the BIA to ignore § 212(c)'s "plain language." *Id.* at 6.

The Court agrees that Hartman was convicted of an aggravated felony and served more than five years in prison as of the date the IJ granted a § 212(c) waiver. However, the application of § 212(c)'s "plain language" to Hartman's case is not as "straightforward" as the Government contends because of the erroneous *Soriano* decision, and the reliance of the IJ on that decision in denying his § 212(c) waiver application in April 1997, before Hartman had been imprisoned for five years. The issue is thus whether the time Hartman served in prison after the IJ's improper decision should count toward the five-year bar. The Court holds that it should not count and thus, contrary to the BIA's ruling in March 2002, the application for § 212(c) relief was not untimely when the IJ addressed the merits of that application on January 25, 2001.

1. *The Statutory Five-Year Bar*

■ At the outset, the Court addresses Hartman's argument that the five-year clock stops upon filing an application for § 212(c) relief, which, in this case, would be January 1997. The Court disagrees with that argument. The five-year clock of § 212(c) does not stop when an alien, such as Hartman, files an application for a discretionary waiver. *See Gomes v. Ashcroft*, 311 F.3d 43, 45 (1st Cir.2002) (holding that the relevant date is not when petitioner filed for § 212(c) relief); *Falconi v. INS*, 240 F.Supp.2d 215, 218 (E.D.N.Y.2002) ("[T]he five-year clock

does not stop running once a prisoner first applies for INA § 212(c) relief . . .") (citing *Buitrago–Cuesta v. INS*, 7 F.3d 291, 296 (2d Cir.1993) ("Just as we credit aliens for time spent in the country while an appeal is pending before the BIA so that they are eligible for § 212(c) relief, we will also consider the time aliens spend in prison during the course of a hearing for purposes of rendering them ineligible for § 212(c) relief.")). Rather, the five-year clock "continues to run until an Immigration Judge issues a decision." *Falconi*, 240 F.Supp.2d at 218; *see also Mezrioui v. INS*, 154 F.Supp.2d 274, 277 (D.Conn. 2001).

■ Therefore, in the present case, if the IJ decided Hartman's *initial* request for § 212(c) relief *after* he had already served five years in prison, the error in following the *Soriano* decision and retroactively applying AEDPA § 440(d) would have been "harmless since [Hartman] would have been barred from the pre-AEDPA § 212(c) relief anyhow." *Id.* However, when the IJ issued her initial decision in April 1997, finding Hartman ineligible for a waiver on the basis of *Soriano* and AEDPA, he had been incarcerated less than two years. Thus, at that time, Hartman was eligible to apply for § 212(c) discretionary relief because he had not been incarcerated for five years and, but for the erroneous reliance on *Soriano*, he would have been deemed eligible for such relief. The Court must now decide whether Hartman's waiver application should be rejected under those circumstances. In answering that question and determining that Hartman is eligible for a § 212(c) waiver, the Court finds the following cases instructive.

In *Archibald v. INS*, No. 02–0722, 2002 WL 1434391 (E.D.Pa.2002), deportation proceedings were initiated against Archibald in 1994 based on drug and robbery convictions. Archibald applied for

§ 212(c) relief in 1995. In March 1997, the IJ ruled that he was ineligible for such relief based on AEDPA § 440(d) and ordered him deported; that decision was affirmed by the BIA in August 1997. Following the *St. Cyr* decision, Archibald appealed to the BIA to reopen his case; that appeal was dismissed. Archibald then filed a § 2241 habeas petition in district court, claiming he was improperly denied the opportunity to seek § 212(c) relief because of the erroneous retroactive application of AEDPA § 440(d). The court agreed, stating that "[a]lthough Archibald's convictions qualified as aggravated felonies, he nevertheless would have been eligible for a waiver under section 212(c) because, at the time his order of deportation became final [in August 1997], he had served only three years of his prison term." *Id.* at *6. The court thus held that Archibald was entitled to apply for a waiver pursuant to § 212(c).

In *Lara v. INS*, No. 3:00CV24DJS, 2002 U.S. Dist. LEXIS 21522 (D.Conn.2000), deportation proceedings were initiated against Lara in 1994; he was found ineligible for § 212(c) relief by an IJ in 1997 because of AEDPA and IIRIRA. At that time, Lara had served less than three years in prison for a drug conviction. Lara appealed the IJ's decision to the BIA. "[D]ue to a lack of a complete transcript of the proceedings," the BIA remanded the case in 1999. *Id.* at *4. On remand, the IJ found that Lara was not eligible for a § 212(c) hearing because, at that time, he had been imprisoned for a little more than five years. Lara then sought habeas relief in district court. The court remanded the case to the BIA to address the merits of Lara's § 212(c) application because his time in prison "did not reach the five-year mark during the pendency of the administrative hearing at which the IJ improperly applied the AEDPA and IIRIRA retroactively." *Id.* at *8. That ruling was based on the fact that had the IJ not erroneously applied AEDPA

and IIRIRA, when initially ruling Lara ineligible for § 212(c) relief in 1997, the five-year bar would not have "impeded Lara's pursuit of a deportation waiver." *Id.*

In *Greenidge v. INS*, 204 F.Supp.2d 594 (S.D.N.Y.2001), removal proceedings against Greenidge were commenced in 1998 because of a 1993 manslaughter conviction. In 1998, an IJ concluded that § 212(c) relief was unavailable based on AEDPA § 440(d); at that time, Greenidge had not yet served five years in prison. His appeal was dismissed by the BIA in 1999. Greenidge then filed a habeas petition in district court, claiming that the IJ's retroactive application of AEDPA was improper. In response, the INS argued that Greenidge was ineligible for § 212(c) relief because he "passed the five-year mark while his removal proceeding was pending [on appeal]." *Id.* at 597. The court disagreed with the INS's arguments, stating that "it is only because the IJ reached a decision adverse to petitioner that the proceedings were extended and petitioner's incarceration passed the five-year mark before the merits of his Section 212(c) application could be addressed." *Id.* at 598. Accordingly, the court remanded the case to address Greenidge's § 212(c) application, holding that "but for the IJ's erroneous determination ... petitioner's claim [for 212(c) relief] could have been timely considered." *Id.* at 600.

In *Falconi v. INS*, 240 F.Supp.2d 215 (E.D.N.Y.2002), in 1998, an IJ ordered Falconi deported for a 1996 cocaine conviction and denied her application for a § 212(c) waiver based on § 440(d) of AEDPA. In 1999, the BIA dismissed her appeal. Based on *St. Cyr*, Falconi filed a motion to reopen her case. That motion was denied because Falconi had been imprisoned for five years. She then sought habeas relief in district court. Finding

that, absent the improper retroactive application of AEDPA by the IJ and the BIA, Falconi would have been eligible to apply for § 212(c) relief, the court remanded the matter to the INS to consider her § 212(c) application.

The Court finds the analysis in the above cases to be apposite to the instant case. When Hartman was first denied § 212(c) relief in April 1997, he had served less than two years in prison. Thus, his time in prison "did not reach the five-year mark during the pendency of the administrative hearing at which the IJ improperly applied the AEDPA ... retroactively." *Lara,* 2002 U.S. Dist. LEXIS 21522, at *8. Therefore, but for the erroneous decision in *Soriano* and the IJ's reliance on that decision in initially denying Hartman's waiver application, the five-year bar of § 212(c) would not have "impeded [his] pursuit of a deportation waiver" and his application would thus have been timely considered. *Id.; see also Archibald,* 2002 WL 1434391, at *6; *Snajder v. INS,* 29 F.3d 1203, 1208 n. 12 (7th Cir.1994) (stating that "[i]f at the time that Mr. Snajder's [original] appeal to the BIA was [erroneously] denied, Mr. Snajder still was eligible for [§ 212(c) relief because he had not yet served five years], the IJ [on remand] should take this into account at the new deportation hearing.").

In other words, had there been no improper retroactive application of AEDPA § 440(d) and reliance on *Soriano,* the merits of Hartman's § 212(c) application would have been addressed before November 14, 2000, the date he reached five years in prison. It was only because of the IJ's erroneous decision in denying Hartman's application that deportation proceedings were prolonged and extended such that his incarceration passed the five-year mark before the merits of his waiver application were finally addressed on January 25, 2001. *See Greenidge,* 204 F.Supp.2d at

598. Under these circumstances, he "should not forfeit the right to seek a Section 212(c) humanitarian waiver of removal solely as a result of an incorrect decision by the IJ." *Id.; see also Falconi,* 240 F.Supp.2d at 219; *Batanic v. INS,* 12 F.3d 662, 667–68 (7th Cir.1993) (applying the law in effect at the time of Batanic's initial asylum application where proceedings had been prolonged as a result of an IJ wrongfully denying him counsel at the initial hearing and an interim change in the law had rendered Batanic ineligible for asylum).

Accordingly, the Court concludes that Hartman was eligible to seek § 212(c) relief at the time the IJ addressed the merits of his waiver application on January 25, 2001.

## C. Petitioner is Entitled to Section 212(c) Waiver

Having determined that Hartman was eligible to apply for a § 212(c) waiver on January 25, 2001, the Court must now decide the way in which the § 212(c) waiver application should be processed. For the reasons set forth below, the Court concludes that the January 25, 2001 decision granting Hartman § 212(c) relief should be reinstated, and remands the case to the BIA to do so and to vacate the BIA decisions of March 13, 2002, and October 24, 2002, which ordered Hartman removed from the United States.

▮ When considering a § 212(c) waiver application, an IJ or BIA "must balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf." *Tipu v. INS,* 20 F.3d 580, 583 (3d Cir.1994) (quoting *Matter of Marin,* 1978 WL 36472, 16 I. & N. Dec. 581, 584 (BIA 1978)). Favorable considerations include: "family ties within this country, residence of long duration in this country (especially when the inception of

residence occurred at a young age), evidence of hardship to the [alien] and [alien's] family upon deportation, service in this country's armed forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of genuine rehabilitation if a criminal record exists, and other evidence attesting to [an alien's] good character." *Id.*

■ Adverse factors include: "the nature of underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record, and, if so, its nature, recency and seriousness, and the presence of other evidence indicative of [an alien's] bad character or undesirability as a permanent resident of this country." *Id.* Where an alien is deportable by reason of a drug conviction, as in this case, the alien must demonstrate "unusual or outstanding equities" to obtain a waiver of deportation. *Id.; see also Lovell v. INS,* 52 F.3d 458, 461 (2d Cir.1995).

■ In this case, the IJ, "after [balancing] all the equities," granted Hartman's § 212(c) waiver application by Order dated January 25, 2001. Pet. at Ex. C. The IJ found that his strong family ties,[7] 25 years of residency,[8] and his service in the United States Navy, where he was honorably discharged, were "outstanding equities" in Hartman's favor. *Id.* The IJ also concluded that Hartman had "demonstrated remorse for his past action and rehabilitation, to the best that one can while still incarcerated," and found that if he were deported to Guyana, he and his family will suffer "great hardship." [9] *Id.*

The Court sees no reason to disturb the IJ's discretionary ruling of January 25, 2001.[10] The BIA affirmed that ruling in September 2001. The INS then filed a motion to reconsider the BIA's decision on the ground that Hartman was statutorily ineligible for § 212(c) relief on January 25, 2001 because his term of imprisonment had exceeded five years. The INS did not seek reconsideration of the IJ's decision on the merits. The BIA agreed with the INS and granted the motion to reconsider. In reaching its decision to overrule the IJ, the BIA did not address the IJ's discretionary determination in awarding Hartman a waiver, but simply found that he was "statutorily ineligible for the waiver due to the 5–year bar at the time [the IJ] concluded the merits hearing and ultimately issued a final decision granting the relief" on January 25, 2001. Pet. at Ex. E.

The Court has already determined that Hartman was eligible to seek § 212(c) re-

---

**7.** The IJ noted that Hartman's mother, two sisters, brother, and all three children are United States citizens and that Hartman plans on marrying the mother of his two younger children. The IJ also noted that Hartman had no family in Guyana.

**8.** Hartman was 12 years of age when he came to the United States in 1976 and returned to Guyana only once in 1990.

**9.** One of Hartman's daughters suffers from sickle-cell anemia and her mother testified that "she can barely care for" her without Hartman's assistance. Pet. at Ex. C. Further, according to Hartman's mother, Hartman would face discrimination in Guyana because

"his father was born in the United States." *Id.* In addition, the IJ noted "the hardship and stress that [his deportation] would cause his mother who has already suffered two heart attacks." *Id.*

**10.** The Court notes that it does not have habeas jurisdiction to review the IJ's *discretionary* decision to award Hartman § 212(c) relief. *See Steele v. Blackman,* 236 F.3d 130, 132–133 (3d Cir.2001) (limiting habeas review of removal orders to statutory or constitutional challenges); *Sol v. INS,* 274 F.3d 648, 651 (2d Cir.2001) (holding that "federal jurisdiction over § 2241 petitions does not extend to review of discretionary determinations by the IJ and the BIA").

lief at the time the IJ issued her discretionary decision granting him such relief. That decision was reversed by the BIA, not on the merits of Hartman's application, but based on § 212(c)'s five-year-imprisonment bar. In view of this procedural history, another hearing to consider Hartman's application is unnecessary. For that reason, the Court concludes, on the present state of the record, that the IJ's decision of January 25, 2001 should be reinstated and remands the case to the BIA with instructions to do so and to vacate the BIA decisions of March 13, 2002, and October 24, 2002, which ordered Hartman removed from the United States. In the event the INS determines that changed circumstances since the IJ's decision of January 25, 2001 warrant reconsideration of the granting of a § 212(c) waiver of deportation, the Court grants the INS leave to file an application for a remand to consider such changed circumstances.

## III.  CONCLUSION

For all of the foregoing reasons, the Court remands the case to the BIA with instructions to vacate its decisions of March 13, 2002, and October 24, 2002, and reinstate the IJ's decision of January 25, 2001 granting Hartman a waiver of deportation under § 212(c) of the INA. Should the INS determine that changed circumstances since the IJ's decision warrant reconsideration of the granting of the waiver, the Court grants the INS leave to file an application for a remand to consider such changed circumstances.

An appropriate Order follows: